Homer Samuel ADAMS, III,
*Petitioner,*

*v.*

BOARD OF CLINICAL SOCIAL WORKERS,
*Respondent.*

2001-01, 2002-14, 2002-25; A123812

119 P3d 260

Bert P. Krages II argued the cause and filed the briefs for petitioner.

Richard D. Wasserman, Attorney-In-Charge, Civil/ Administrative Appeals Unit, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Armstrong, Presiding Judge, and Brewer, Chief Judge, and Landau, Judge.*

ARMSTRONG, P. J.

---

* Landau, J., *vice* Ceniceros, S. J.

**ARMSTRONG, P. J.**

Petitioner seeks review of an order of the Board of Clinical Social Workers permanently revoking his license to practice as a clinical social worker in Oregon, advancing three assignments of error. First, he contends that the administrative law judge (ALJ) abused his discretion by refusing to grant a continuance. Second, he contends that the ALJ erroneously excluded evidence and failed to "ensure that the record developed at the hearing shows a full and fair inquiry into the facts necessary for consideration of all issues properly before the presiding officer in the case." ORS 183.415(10). Finally, he contends that the board's findings are not supported by substantial evidence. We conclude that the board did not err and affirm.

The Board of Clinical Social Workers is the agency responsible for licensing, regulating, and disciplining clinical social workers in Oregon. Petitioner was licensed by the board to practice as a clinical social worker. In June 2002, the board began an investigation into allegations of unprofessional conduct filed by petitioner's former clients, AO and JO, who are husband and wife. The board asked petitioner to provide it with copies of his records on AO and JO, which petitioner initially failed to do. The board subsequently served petitioner with a subpoena requiring him to appear or to provide all chart notes and treatment reports involving AO and JO. Petitioner did not provide the requested documents by the time requested. On August 6, 2002, the board issued a notice of intent to discipline petitioner under ORS 675.540(2)(a) that proposed to revoke his license to practice clinical social work for engaging in a sexual relationship with a client, AO, in violation of OAR 877-030-0070(4),[1] committing unprofessional conduct in the practice of clinical social work, in violation of ORS 675.540(1)(d),[2] and failing to

---

[1] OAR 877-030-0070(4) (2003) provides, in part:

"The Clinical Social Worker shall under no circumstance engage in or solicit sexual acts or sexual relationships with current clients nor with a client to whom the Clinical Social Worker has at any time within the previous three years rendered clinical social work practice."

[2] ORS 675.540 provides that the board may "[d]eny, suspend, revoke or refuse to renew * * *" the certificate of a social worker who "has been grossly negligent or has engaged in unprofessional conduct in the practice of clinical social work[.]"

cooperate with the board's investigation, in violation of OAR 877-030-0090(2).[3] On August 23, 2002, the board issued an emergency suspension order involving a third client, KP, suspending petitioner's license pursuant to ORS 183.430(2),[4] on the ground that his continued practice as a clinical social worker presented a serious danger to public health or safety. On that same date, the board issued a second notice of intent to discipline petitioner that proposed to revoke his license for engaging in unprofessional conduct in the practice of clinical social work with a client, KP, under ORS 675.540(1)(d) and in violation of OAR 877-030-0040(2)[5] (dishonesty, fraud, deceit, or misrepresentation) and OAR 877-030-0070(4). On February 14, 2003, the board issued an amended emergency order, involving clients KP, AO, and JO, suspending petitioner's license pursuant to ORS 183.430(2) on the ground that his continued practice of clinical social work presented a serious danger to public health or safety.

Petitioner requested a hearing, and the board referred the matter to the Office of Administrative Hearings (OAH) for a contested case hearing. Pursuant to ORS 183.413, on October 24, 2002, the board notified petitioner of the contested case procedures, including his right to be represented by an attorney. A prehearing conference scheduled for November 14, 2002, was postponed so that petitioner could arrange for legal representation or discuss the case with his attorney. At a prehearing conference on February 28, 2003, the parties agreed to a hearing date of April 30, 2003. The ALJ notified petitioner that he had the right to be

---

[3] OAR 877-030-0090(2) (2003) provides, in part, that "[t]he Clinical Social Worker must cooperate with the Board or any committee thereof in any investigation it may make pursuant to these rules."

[4] ORS 183.430(2) provides, in part:

"In any case where the agency finds a serious danger to the public health or safety and sets forth specific reasons for such findings, the agency may suspend or refuse to renew a license without hearing, but if the licensee demands a hearing within 90 days after the date of notice to the licensee of such suspension or refusal to renew, then a hearing must be granted to the licensee as soon as practicable after such demand, and the agency shall issue an order pursuant to such hearing as required by this chapter confirming, altering or revoking its earlier order."

[5] OAR 877-030-004(2) (2003) provides, in part:

"The Clinical Social Worker shall not participate in, condone, or be associated with dishonesty, fraud, deceit, or misrepresentation."

represented by an attorney but that the hearing would not be postponed so that he could obtain counsel. Also on that date, the board's administrator advised petitioner by letter "that if you plan to be represented by legal counsel, you must retain counsel immediately[.]" On April 8, the OAH notified petitioner that his hearing would be held on April 30.

On April 30, 2003, an ALJ from the OAH conducted a contested case hearing. Petitioner requested a continuance of the hearing so that he could obtain an attorney, explaining that he had just learned that morning that his insurance would cover the costs of legal representation at the hearing. The ALJ denied that request, noting that petitioner had had adequate time to prepare for the hearing and had not previously notified the board, the OAH, or the ALJ of any difficulty in obtaining counsel. The hearing proceeded, and petitioner was unrepresented.

AO and KP testified about sexual encounters that they had had with petitioner while they were his clients. Petitioner expressed uncertainty as to how to put on his defense. With the assistance of the ALJ, he denied having had any sexual involvement with either client. He admitted that he had not responded to the board's subpoena in a timely manner. After the hearing, the ALJ issued a proposed order recommending that the emergency suspension orders be upheld and that petitioner's license to practice as a clinical social worker be revoked. Petitioner filed exceptions to the proposed order. The board considered and rejected petitioner's exceptions, adhered to the ALJ's rulings concerning the admissibility of evidence, and upheld the suspension orders.

The board found that AO and JO sought counseling with petitioner for marital issues. From the fall of 1998 until the summer of 2001, petitioner counseled them separately. The board found that, "[o]n about December 16, 1999, AO had a session at [petitioner's] office and [petitioner] had sex with AO. About a week later, at the next session, they had sex in the office again and continued to have sex, weekly or twice weekly," the last incident occurring on September 11, 2001. The board also found that petitioner had sex with KP during two marriage counseling sessions in the spring of 2002. The

board concluded that petitioner had violated OAR 877-030-0040(2) and OAR 877-030-0070(4), and concluded that such conduct constituted a serious danger to the health or safety of petitioner's clients and the public. The board therefore upheld the emergency suspension orders under ORS 183.430. The board further held that petitioner had not been cooperative with the board in the investigation of the complaint by AO and had therefore violated OAR 877-030-0090(2) and had committed unprofessional conduct within the meaning of ORS 675.510(6) such that his license should be revoked under ORS 675.540(1)(d) and ORS 675.540(2)(a).

■ On review, we first address petitioner's argument that the board erred in affirming the ALJ's ruling denying him a continuance so that he could obtain an attorney. The ALJ had discretion to allow a postponement of the hearing.[6] The record indicates that the ALJ notified petitioner some six months before the hearing that he had the right to an attorney and advised him two months before the hearing that the hearing would not be postponed for petitioner to obtain an attorney. Petitioner received three weeks' notice of the date of the hearing. At the hearing, petitioner told the ALJ that he had had financial difficulty securing legal representation but had just learned that morning that his insurance would cover the cost. Given petitioner's advance notice of the hearing date and the length of time that he had been aware of his need for an attorney, we conclude that petitioner had an adequate opportunity to make arrangements for counsel and that the

---

[6] OAR 877-040-0070 provides:

"The respondent or the Board may request a postponement of the scheduled hearing. No postponement shall exceed 30 days unless stipulated to by all parties. The Hearings Officer will grant a postponement of the hearing:

"(1) Upon showing by the party that for reasons beyond their control they or their attorney:

"(a) Cannot attend the scheduled hearing; or

"(b) Cannot obtain necessary evidence;

"(c) If both parties agree to a postponement.

"(2) Reasons beyond the control of the parties include, but are not limited to:

"(a) A breakdown in transportation with no alternative;

"(b) Inclement weather preventing travel;

"(c) Other adverse circumstances precluding attendance at the hearing."

board did not err in adopting the ALJ's ruling denying petitioner's request for a postponement.

■     We next consider petitioner's contention that the board erred in upholding the ALJ's decision to exclude, as irrelevant, evidence that he asserts would have aided in his defense. Irrelevant evidence is inadmissible in an administrative proceeding. ORS 183.450. The relevance of evidence is a legal question that we review for errors of law. ORS 183.482(8)(a); *see Pauly v. Employment Division*, 74 Or App 479, 483, 703 P2d 991 (1985). Petitioner offered pages from the advertisement website of a California attorney whom AO and JO had engaged to represent them in a separate lawsuit against petitioner that the parties had settled before the hearing. The pages advertised the lawyer's success in representing clients in a variety of malpractice claims. In petitioner's view, the material would have shown that AO and JO had a financial motive in accusing him. Neither the facts nor the existence of the civil suit or settlement were at issue or presented to the ALJ. The ALJ considered the materials and determined that they were not relevant to the issues to be decided in the hearing and were therefore inadmissible. The board affirmed the ALJ's ruling.

Petitioner sought to introduce the testimony of two witnesses, DR and Toln Meissner. AO testified at the contested case hearing that on September 26, 2001, she came to petitioner's office in order to make an appointment to see him. She peeked through an opening in the shade over the therapy room window and saw petitioner kissing and embracing a woman whom she recognized as DR. She testified that she could not believe that petitioner was having a sexual relationship with another client, became angry and started "steaming and stomping around." She filed her complaint with the board shortly thereafter.

Petitioner sought to introduce the testimony of DR, who would have testified that she was not petitioner's client, that she and petitioner were friends, and that there had been no kissing or touching between them. DR would further have testified that, after seeing her with petitioner, AO had stalked her and behaved in a menacing way. Petitioner asserts that the testimony could have shown that AO

behaved irrationally and vindictively, thereby undermining her credibility. The ALJ considered petitioner's explanation for offering DR's testimony and concluded that, because DR was not petitioner's client, the evidence was not relevant to any issue to be decided in the hearing. The board upheld the ALJ's determination.

Finally, petitioner offered the testimony of Meissner, the fiancé of petitioner's office manager, who worked as a courier and was available part time to provide security services to petitioner. Meissner would have described his availability to enforce the heightened security measures that petitioner had put into place after AO and JO had filed a civil complaint against petitioner in December 2001, so that petitioner would never be alone with a client in his office suite. Petitioner explained that Meissner did not know either AO or KP but might have caught a glimpse of them. In petitioner's view, Meissner's testimony would nonetheless have demonstrated that it was unlikely that petitioner had engaged in sexual activity in his office. Meissner would further have supported petitioner's assertion that the delay in providing subpoenaed documents to the board had not been intentional by explaining how he had assisted in the delivery of the documents. The ALJ and the board concluded that Meissner's testimony was not relevant to any issue to be decided in the proceeding and excluded it.

We have considered each of the disputed items of evidence and the reasons for which they were offered. We conclude that, to the extent that the evidence was probative of the issues involved in the case, the relevance was marginal. Additionally, most of the evidence was duplicative of other testimony that had previously been admitted. For those reasons, we conclude that any error in excluding the evidence did not substantially prejudice petitioner and is not, for that reason, a basis for reversal. *See* ORS 183.450 ("[E]rroneous rulings on evidence shall not preclude agency action on the record unless shown to have substantially prejudiced the rights of a party[.]"); *Hoffman Construction Co. v. Employment Dept.*, 173 Or App 420, 423, 21 P3d 1098 (2001).

■   We turn to petitioner's contention that the ALJ failed to comply with ORS 183.415(10). That statute provides that

"[t]he officer presiding at the hearing shall ensure that the record developed at the hearing shows a full and fair inquiry into the facts necessary for consideration of all issues properly before the presiding officer in the case." Petitioner contends that the ALJ did not satisfy the requirement of a full and fair inquiry into the facts because the ALJ gave petitioner only minimal assistance in developing the record, did not follow up on relevant favorable evidence, and "allow[ed] conduct [by the board's attorney] that was intended to adversely affect the presentation of the [petitioner]'s case." We have read the transcript of the proceeding. The ALJ assisted petitioner many times by explaining hearing procedures, guiding petitioner's testimony, asking questions of petitioner and his witness, and asking petitioner if he had anything further to offer. The ALJ also assisted petitioner to work around objections raised by the board's attorney. We conclude that the ALJ satisfied the requirements of ORS 183.415(10).

We have considered and reject without discussion petitioner's contention that the board's findings are not supported by substantial evidence.

Affirmed.